Third case in the morning, people in the state of Illinois v. Ellis, 408-0662, for the appellant, Mr. Delcomen. Delcomen, I'm sorry, I've done that now probably three times in a row. To the aptly, Ms. Brooks. You may proceed. Thank you, Your Honor. Good morning. May it please the court. Counsel. Prusak's deficiencies are obvious and even may be mandated on us to report some of these matters to the ARDC. Those aren't my words. That's what the prosecutor said at his argument on the defendant's motion to withdraw his guilt. Again, the prosecutor said that. So I think with that as our starting point, let's talk about Raymond Prusak's ineffectiveness in this case. His ineffectiveness led to Mr. Ellis' plea not being known. How was Prusak ineffective? He told Mr. Ellis that he would receive a minimum three to four year sentence. He didn't discuss the evidence or the merits of the case with Mr. Ellis. He sent his wet-behind-the-ears associate, Barrett, whom Mr. Ellis had never met, didn't even know existed, to convince him to plead guilty. Most importantly, Prusak had no idea what kind of sentence the state was going to recommend or, of course, in turn, what kind of sentence the trial court was going to impose. Proper admonishments notwithstanding, all of these facts taken together show that Mr. Ellis' plea was not known. Let me just say, the state responds that Prusak took a proper course of action. The state, I think, theorizes, not to make the state's argument forward, but the state, I think, theorizes that this was an example of the defense counsel counseling his client to sort of, quote-unquote, throw himself on the mercy of the trial court. Now, I certainly recognize that that can be an appropriate strategy in certain cases. This was not one of those cases. Those cases are when the evidence is overwhelming, when the state has indicated, most importantly probably, when the state has indicated to defense counsel, well, we're going to ask for the moon. You don't have a shot at trial anyway. We've got you, and this is a terrible crime, so you can take your chance at the trial if you want, but we're asking for the maximum anyway. Those are the situations where you say to your client, well, let's talk about taking an open plea. This is the only offer they're giving us, which isn't much of an offer, but it's the only offer they're giving us. Let's talk about taking an open plea and trying to convince the trial court with your evidence and mitigation and the fact that you plead guilty that you deserve less than the maximum sentence. But what's missing here is overwhelming evidence and, most importantly probably, that knowledge about what the state was going to ask. Now, I talk about this in my brief. I suggest the PROSEC should have at least attempted to talk to the state. This doesn't necessarily mean hammering out a negotiated plea agreement. It doesn't necessarily mean requesting a specific cap, although it could have. Well, I'm a little bit confused by your declaration that the evidence against your client was not somewhat overwhelming. I think it's pretty much undisputed that he was driving a semi and, for whatever reason, lost control of it to the point where an accident ensued and two people were killed. It's also, I think, beyond argument that he had traces of cocaine in his system. Not that he was under the influence of cocaine at the time. That's an open question, I think. And I think that's the key. The offenses that he pled guilty to, I'm not seeing where the defense is. Well, intoxication. That's the key. Because for aggravated DUI, as I explain in my brief, my reading of the statute is that one of the state's elements to prove a trial is under the influence, or we'll just use the word intoxication. And that's the key. I mean, I agree with you as far as every single thing that you said, as far as what the evidence would show. They would have had him just based on the fact that it was in his system for a sort of regular, I'll call it a drug DUI. Because that statute only requires that he have the presence of the cocaine in the system. And there was proof of that. I mean, I can't imagine that there would have been much of a defense mounted to that trial. The defense, I think, would have been impairment. And that's the key. That burden would have been on the state to show that. Now, could they have shown it? It's certainly possible. But would they have had to call an expert to say, these were something like we see in marijuana cases. These were the levels in his system. I'm an expert. The effects of cocaine last for so many hours. This is how it impairs you. This is reaction time, whatever the case may be. That's all the state's burden to prove. And they would have had to prove that in this case. And Prusak recognized that because he even mentioned that at sentencing. He even said, well, there's no proof of impairment. Because, of course, he pled guilty. The fact of the matter remains that that would still have been a valid defense at trial. And I'm not saying that he would have won a trial. But I don't think that's an insubstantial burden for that element. I don't think it's an insubstantial burden for the state to prove. Now, following from that is that the state was going to ask for 28 years one way or the other. So now, if there was evidence that if they said to Prusak, hey, look, here's the lab report on the urinalysis, or whatever the case may be. We have these numbers. We're going to be able to prove this. You don't have a defense here. We're asking for the 28 years. That conversation, from what we can tell by the record, never happened. We don't know for sure, in part because Prusak skipped out on two hearings of this, ignoring two subpoenas. But I think it's safe. I think it's a reasonable assumption based on the record before us that that conversation didn't happen. With that in mind, he didn't know what the state was going to offer. He has a potential defense, which he mentions at sentencing. Oh, and I'll mention one other thing. The road conditions were bad. The state even admitted that. So I don't think that's in dispute. That could have played into his defense as well, where maybe the effects of the cocaine were tailing off. Maybe it was more weather-related as opposed to a result of being under the influence. So I agree with you. I mean, I'll sum it up by saying I agree with you that the evidence was overwhelming up to a point, but not for the crime, the aggravated DUI, to which he got the 28-year sentence. And the other thing is, I mean, I think this goes back to Prusak's preparation and what he did, or more importantly in this case, didn't do. Apparently, he didn't have these conversations with the state. And that's what's vital. Because those conversations then, you take that information and you go to the defendant and you say, here's the information. Why don't you make a reasoned determination? You're out at the creek with no paddle. They've got you. They're going to ask for 28 years one way or the other. So either we can then throw ourselves on the mercy of the trial court and you have good mitigation. And in a case like that, it could have been a good route to take. But again, the record doesn't seem to support that that was the route taken. I don't think he did the necessary sort of pre-plea-led work. Well, there's no question that this fellow did a terrible job. I mean, that's not really the issue before us, I don't think. I think the issue before us is whether or not the plea was knowing and voluntary. Well, I won't disagree that it's voluntary. I mean, I'm not raising the argument that it was an involuntary plea. And knowing? No, but I'll say that it was not knowing. Wasn't he admonished by the trial court? Yes, he was admonished, and I think he was arguably properly admonished. I'm not raising that as the issue. But the question is, proper admonishments don't cure everything. And I'll use that as a segue to talk about Morrell. Now, granted, the required admonishments were different when that case was decided than they are today. But I think that stands as a good example of proper admonishments don't necessarily cure all problems with ineffective assistance of counsel in our case, or in that case, sort of the general circumstances of that case. Now, the three factors that the Supreme Court relied on in that case were the pressure from the prosecutor, the hurried, sort of the way it was done in a hurried manner when the defense wasn't expecting it to be, you know, the plea was done in a hurried manner when the defense wasn't expecting it to, and third was that the defendant, as a result of the way this happened, wasn't represented by his counsel of choice. Now, I think those three factors are present here. They're slightly different, but I think those three factors are present here. We have hurried proceedings. He comes into court, and here comes this newbie up to him and says, hey, you're pleading guilty today, right? Well, what are you talking about? I'm not pleading guilty. We had it set for a bench trial. I thought we were going to a bench trial. I paid $6,000, $6,500 thinking that we were going to a bench trial. No, no, no, no. Your regular attorney tells me to tell you that a guilty plea is the only way to go, and we'll just take care of it today. Mr. Ellis takes the unusual step to talk to the prosecutor as if that's the right person to seek advice from. He was clearly, I mean, even Baird even admitted this. He was not comfortable pleading guilty. He needed some further representations. Now, the details of that discussion with the prosecutor aren't in the record, and I'm not going to surmise what they talked about, but he felt well enough at the end of that, at the end of these conversations, that he decided to plead guilty. So we have these hurried proceedings. We have pressure, but we don't have pressure from the state. What's worse in this case, and this goes back to my ineffective assistance of counselor, we have pressure from defense counsel who didn't even show up. We have him telling the associate who knows next to nothing about this case, plead guilty. It's the only way to go. They use that. It's the only way to go. Well, it wasn't the only way to go. If he's facing a 28-year, you know, potential 28-year, the state's recommendation, at least, of a 28-year sentence, you know, if he's convicted or if he's not, he's already paid for a bench trial. Why wouldn't he go to a bench trial? Well, because... Didn't Barrett testify that he told the defendant, if you want to continue the case until Prusak can be here, we can do that? Yes, he did say that. And the defendant indicated he wanted to go ahead and plead guilty. Yeah, at the end of the day, right. And I said that after he talked to the prosecutor, he felt okay enough with the circumstances to go through with it. But I will say, in Morreale, the defendant had an opportunity to pass and to have the case continue. In fact, the trial court had already continued the case once, but they still ended up saying that the plea wasn't knowing. So it's still sort of in line with Morreale. And again, the pressure here was from his attorney. His attorney who hadn't done the appropriate legwork in order to see what the state was going to recommend in this case. And I'll say a distinguishing factor between the two cases, but one that I think weighs in Mr. Ellis's favor is that the pressure in Morreale came from the state. The state, however, said, look, I'll give you... I'm promising you that I'll give you a recommendation of probation. Right? So that was the state's carrot in the case. So the state was pressuring him to plead guilty, yes, but at the same time, they were promising in return to offer the best possible sentence they could offer. Well, in this case, there was none of that. There was, well, apparently, no indication at all of what the state was going to ask for. And it turned out to be 28 years, the maximum sentence of 28 years. So the pressure came from defense counsel, not knowing that the state was going to ask for 28 years. And finally, he wasn't, you know, another similarity between this case and Morreale, was that he wasn't represented by his, arguably by his counsel of choice at that hearing. I sympathize with the argument about the representation. The flip side of that, though, is that this is almost a case where you're asking the trial court to hold up a sign that says, ignore what I am saying, and hold out for the last, best hope of some dumbass comment that your counsel has made. And we really do have to begin to talk about personal responsibility. I can remember, and there's a lot of trial court experience among the three of us, I can remember saying, I don't care what your counsel may have told you back in conference room. I don't care what your mother is telling you is going to happen if you throw yourself on the mercy of the court. You need to understand that this is a blind plea or an open plea, and I'm going to hear everything, and I'm going to decide what to do, and I'm going to decide what sentence to impose. And I've told you exactly what the outline of the sentences are. Now, do you understand that, and are you willing, under those circumstances, and has anybody told you anything to make you think that there is a promise or an agreement or a side agreement that is somehow going to influence what occurs in this case? And you'd have a defendant say, no, no, no, nobody sent you. And then later you get the motion to withdraw, which says, well, my attorney told me that I'd probably only get three or four years, or I was going to get to go home and promise never to do it again. And you want to pull the guy up and slap him and say, look, we can't protect you against yourself. You have to understand, you said he was admonished, you have to understand those admonitions mean something. Now, the flip side of that is he didn't get much for the dollars that he paid from either counsel. We understand that. So what do we do? If you can prove that your lawyer is a doofus, you get to withdraw your plea, or if we can show that you were so fully admonished, and these really are pretty good admonitions. I think the question was about as thorough as he could be. I agree. What's the balance? Well, I think the balance is look at the facts of each particular case. But the facts of each particular case, if he doesn't have his head in the clouds, he says, I killed two people, they know that I had cocaine in my system. I've got a record. If I admit to myself what everybody else knows, I've got a problem with cocaine. I am not going to walk out of this courtroom with a minimum sentence. Well, I'm not going to walk out of this courtroom a free man. I'm going to do heavy time. And anybody that told him other than that had their head in the clouds. And I think that's the problem. This is pretty serious stuff. Yes, I'll agree with all of that. But I will add that the defendant is looking at it from the best case scenario. He's paying his attorney to give him that advice about this is what you're likely to get and what you're not likely to get. And get the best result. Now, was it unreasonable for him to think that he could get a three to four year sentence? The trial court told him the minimum sentence of imprisonment was six years. Now, you're saying, well, the trial court told him you can get six to 28. Well, it's no more reasonable for him to think, well, I'm guaranteed to get 28 than to think maybe I can get six. This was also probationable. The legislature has said that this is probationable. He has a very minimum record. You're right. Minimum, we can argue about that. But the facts of the record can tell you that this is a person that abuses drugs. And I agree with that. But they continue to drive this huge vehicle. But what I will say is that the continuation notwithstanding, and I'll touch on that in just a second, but the continuation of use notwithstanding, the fact that he was driving, let's say under the influence of cocaine, that he killed two people, those are all inherent in the offense. And with that being said, he could have gotten probation for all of those with all of those factors still being there. So when he pays his attorney, who's promising him the moon, you're going to get a minimum sentence. He doesn't have a long criminal record. He does have a record, which consists of multiple traffic offenses, which are next to nothing in the big scheme of things. One arrest and one felony. Now, the trial court obviously relied on that and talked about this continued pattern of use. Certainly he's a past cocaine user, and he used cocaine again here. But did it justify the maximum sentence, and could he reasonably expect to get the maximum sentence? Usually when we see cases that involve this continued pattern of use, it's DUI number one, DUI number two, DUI number three, DUI number four, and we've killed two people. Those are the patterns of use the person hasn't learned from their past experience. Now, you could argue that this is analogous and that there still was a pattern of use, but I would say it's not, like I said, the textbook pattern of use where, okay, with that in mind, this is your fourth or fifth DUI, you finally killed two people, you're going to be looking at a strong sentence no matter what the state recommends. Well, that wasn't fully the case here, because these factors, two people dead, now granted, he was driving a semi-truck, which I think could be used as a factor in aggravation, but I don't think it's any more reasonable to say that he should have known that he was going to get the maximum 28-year sentence than it was unreasonable for him to listen to his attorney, who he was paying for this advice. And again, the point that I want to keep going back to is his attorney should have gone to the state and said, what are we looking at here? Because in my experience, I've never obviously sat on the trial court, but in my experience, trial courts oftentimes listen strongly to what the state recommends. That's what I've seen in the records that I've read. That's why going to the state and asking what the state is going to give, what they're thinking about this case, again, even in passing in the hallway, is all that defense counsel had to do. And like you said, he was such a doofus, he didn't even do that in this case. If I was the state's attorney, I might not have made up my mind until I read the PSI, and then I find out that this guy still doesn't want to take responsibility for his drug problem, and he's still trying to snow me with soap grit or something else that's in his urine sample. And then I'm thinking to myself, why would lenity be at issue? I know that's speculative, but I don't know what I'm going to ask for. That's why we have a sentencing case. Sure, but at the same time, if defense counsel asks the state that, and the state says, look, I'm not sure, we have victims, families who are very involved in this case, they want me to ask for a significant sentence, you go back and you tell the defendant that. Then the defendant doesn't have anything to complain about. It's not a situation like this where this legwork was done. What was the point of him having an attorney in this case? I mean, he's $6,000 poorer now, but otherwise, what did his attorney do for him in this case? If proper admonishments are the only question, then he loses, because he was properly admonished. But they're not the only question. The question in this case first is effective representation. And I think, as you implied, we probably can all agree that it wasn't effective. But the question is, what was the result? Was there prejudice or not? My guess is, and we don't know this, he testified to this, so I think we can take this as true. But there's this cloud of self-serving testimony over this. Had I known that the state was going to be asking for all this time, I would have taken my chances at a bench trial. And again, I think he does have a defense with this. You might also say, had I known the state was going to do this, I would have told the truth. That's true, too. And what all of this hinges on is his attorney doing his legwork. In a nutshell, that's the sum of my argument. And I think you're right. It's a balancing act. And we'll hear more from you on rebuttal after Ms. Brooks tells us why you all left. Thank you, Your Honor. May it please the Court and Counsel. My name is Anastasia Brooks. I represent the people in this case. The first issue I'd like to discuss is what's sort of been lurking here is the statutory interpretation argument with respect to whether a defendant indeed has a defense to the charge under the facts of this case. And the reason why I say that should be considered first is because it does pertain strongly to the issues of whether the defendant had effective assistance of counsel and whether the ends of justice would dictate that he be permitted to withdraw his plea. And also, of course, if he wins on those grounds, then there wouldn't be any necessity to consider the length of the sentence because it would be sent back for a trial. So that issue, though, is not meritorious for these reasons. The defendant's argument is that although a simple DUI violation here, what he calls a drug DUI, does not require impairment, somehow importing the probable cause element of aggravated DUI into the analysis means that now the defendant has to be impaired in order to actual impairment because of the drugs in order to commit the aggravated offense. However, the element here is that the violation, the statutory language set is the violation of Section 11-501A that is the proximate cause of the death. So here the defendant's claim does not require impairment. So therefore it's like 2 plus 2 equals 5. We're somehow magically inserting this extra element of impairment into something where the statutory language does not actually support it. So the cases that are out there generally are the ones like Johnson's recent decision cited in the defendant's reply brief where there was actually two charges, one which was combined alcohol and cannabis impairment and then the other one was the drug DUI. So this court's analysis with respect to the sufficiency of the probable cause element talked about the defendant racing and speeding and erratic driving and how it relates to the impairment element. Well, that was not a case where the sole allegation, the sole simple DUI charge was the drug DUI as in this case, it was a case in which there was an element of impairment. So I'm not sure that this court's analysis fully speaks to the question at issue here which is is in fact impairment an element of aggravated DUI based solely on the fact that the defendant was driving at the time when he was not permitted to do so because he had any amount of a substance related to his consumption of illegal drugs in his urine in this situation. So stated another way, your view is all the state had to prove was that he was driving in violation of the law, i.e. he had cocaine in his system. To prove misdemeanor DUI, but the element of approximate cause can be, let's set up a counterexample hypothetical situation where somebody smoked cannabis two weeks ago and obviously they're not high anymore, but it still can be detected in their urine suppose. And they're sitting in a stoplight, somebody in front of them, somebody behind them, they're not doing anything wrong except the fact that they are driving in violation of the DUI law because they have it in their urine. They get rear-ended and so they're quote involved in an accident. Somebody in front of them gets killed and they're smashed forward. So they haven't really done anything wrong. So their driving is not approximate cause of the accident except for the fact that if they weren't there maybe they would have been involved. But they're not doing anything wrong essentially other than driving in violation of the DUI law. Here though the defendant is doing something wrong driving in violation of DUI laws plus something else which is losing control of his truck, crossing over the center line and then striking vehicles after losing control and crossing the center line. So it's that element here driving in violation at the time when he was not legal to do so that becomes the approximate cause that is relevant for the particular misdemeanor DUI charge that was relevant here. Now if impairment was an element of his misdemeanor DUI charge then his impaired driving there becomes a part of the approximate cause analysis but only because that is part of the misdemeanor DUI charge. The subsection and issue in a different case. But here impairment is not an issue because that's not an element of the misdemeanor DUI that he was actually charged with. So therefore the defendant in fact has no defense. If he had a defense then he essentially is gaining nothing by pleading guilty except for the hope of a little lesser sentence but he's forfeiting a lot which would be he's got this great defense. He's probably not guilty because under his argument how can the state prove beyond a reasonable doubt that he was actually impaired at the time of the accident just because later they found some cocaine metabolites in his urine. So that could be a good defense if the statutory interpretation argument is successful. However the state's position is that it's actually an erroneous interpretation of the statute and properly construed. The case is actually overwhelming as the defendant would admit if he wasn't his argument is grounded on essentially an erroneous statutory interpretation argument. So with respect to assistance of counsel Strickland is a very tough standard to meet. And the prosecutor acknowledged some deficiencies in the crew tax representation. Deficiencies used in sort of like the common street jargon sense of the word. Not as in what Strickland means deficient performance. So here the deficient performance has to pertain to the advice not being within the range of competence demanded of attorneys in criminal cases. So here the advice was plead guilty is the only way to go. And that's what Barrett communicated that was press exposition. He said through communicating through Barrett who admittedly did not have a lot of, was not very familiar with the facts of this case. But it's not like he got to like a defendant like his argument was Barrett showed up and says you're pleading guilty today. What actually was the defendant wasn't sure. The record shows he says he wasn't sure so he asked what did crew tax say I should do. Then here comes the news. Plead guilty is the only way to go. So the defendant's not sure. He's a little bit reluctant according to Barrett. That's what the record says. There's a lot of dispute here about what actually happened here and you have to be grounded in the record. And the trial court seems to accept Barrett's testimony a lot more over defendant's self-serving and incredible and contradictory testimony. So under the facts as established by Barrett also the defendant claims that he actually talked to the prosecutor in the prosecutor's cross-examination question and also more importantly Barrett's testimony showed that there was never any direct contact between the defendant and the prosecutor who insisted on speaking through counsel. So therefore when it gets down to the defendant's claim that I was told I was going to get only a three to four year sentence in light of his doubtful credibility on many other points and the conflicts in the record with respect to his other claims like for example he told that he hardly ever talked about the case but then there's also indications in the record that he discussed this knife with residue and was it barbecue sauce and he had all these conversations with Prusak about the facts of the case, again contradicting his other testimony. And also whether he only spoke with Barrett for a couple minutes and other evidence showed that well they closed the courtroom, they let him speak off and on for a course of like 30 minutes and eventually then he said okay I'm ready to go through with this. And also he disputed about whether he was ever told that you can continue the case so that Prusak could be here as counsel of choice. And he says no I was never told that of course Barrett says he was. So therefore in those circumstances the trial court does not have to accept the defendant's testimony that where he claims I was told I was only going to get a minimum sentence. But even then well the advice to plead guilty was reasonable. If the evidence was indeed overwhelming and even if for example he found out that the prosecutor was wanting to impose a minimum sentence in that case it becomes all the more paramount to plead guilty and seek leniency and express remorse at the earliest possible opportunity because you're facing a substantial sentence. You know you're going to be facing a substantial sentence in that circumstance. So it doesn't really seem to make any difference whether Prusak actually approached the prosecutor and have a Sixth Amendment obligation in every case to approach prosecutors about potential plea bargains or potential dispositions of their case. It's kind of overstepping what Strickland would require which is to guard the independence of counsel and to not impose many requirements such as the ABA standards cited in the defendant's brief as being constitutional standards that are mandated for representation in a given case. So Prusak did have some reasons to be encouraged in assessing a case for probable leniency such as the snowy conditions, the letters of support, defendants purported good character, snowy conditions, remorse, all that stuff could be thrown in plus maybe Prusak might have had experience with these sort of cases and known that trial court defendant says maybe there's no showing of actual impairments. So therefore maybe application of the statute seems kind of harsh from the defendant's perspective and maybe that might militate in favor of a lesser sentence. So here there was a valid strategy, throw himself on the mercy of the court in hopes for a lesser sentence. Also to try to keep a lot of evidence out. Maybe try to minimize the trial court's exposure to evidence that this guy had cocaine in his cab, albeit only residue, but still that is more connection to his driving. So that could have been an aggravating fact. So he did obtain something to dismissal that charge. The second relevant question in Strickland is whether the defendant would have not pleaded guilty and would have instead insisted on going to trial. Well here that depends on whether a defendant likely would have gained by insisting on trial and everything to gain in the hope of pleading guilty and seeking a lesser sentence. So here ends of justice do not require withdrawing a plea. The trial court's decision of that effect is not an abuse of discretion. The trial court recognizes this is a seemingly close case, far from a perfect one, but still that's a very deferential standard and hard for defendant to meet on this record. I actually want to jump back quickly to the ineffective assistance of counsel issue. One extra point I wanted to make there is defendant assumes that Prostack never talked to the prosecutor when there's no affirmative showing in the record to that effect and this court can't make all kinds of assumptions regarding what may or may not have happened in the record. If that is in fact a crucial consideration, then defendant should be required to actually make an evidentiary showing or allegations in post-conviction review rather than have this court merely assume or speculate. So jumping back, I'm sorry, to the withdrawal of the plea argument, trial court said this is not a pressure situation, had an opportunity to continue the case and it was very unlike the case in Morial where the pressure was coming from the prosecutor. In that case, the prosecutor was assuring him he wouldn't be hurt by going to a plea, that he'd get probation. Then he doesn't get probation, he gets prison and so in that circumstance there's a lot of haste and confusion and interjection by the prosecutor and undue pressure that's definitely not at issue here where the prosecutor has a lot of time and an opportunity to wait until a press that can be there. For those reasons, the defendant should not be entitled to withdraw his plea and with the last issue which is the length of the sentence argument, standard is abuse of discretion on review and the questions are whether the sentence was greatly at variance with the law, spirit and purpose of the law or may have been disproportionate to the nature of the offense. Now this is a harsh sentence. The questions are, I guess, is it overly harsh? Is it so overly harsh that it's so unreasonable it constituted an abuse of discretion even though this court has a very highly differential standard review? And there are numerous problems with the defendant's credibility. There's aggravation from his prior criminal history, albeit only one conviction but then the other uncharged conduct from 2002. But even the prior conviction from 1986 shows that this guy's pattern of cocaine use can go back 20 years and him being a professional truck driver it just leaves one perhaps to wonder how many DUIs did this guy actually commit that we're not ever found out about. So it just seems like when the trial court then says these are my reasons, a semi-truck is a very dangerous thing. It's large, it's heavy, it's moving fast and this guy's got a pattern of cocaine use. So mixing a professional truck driver and a pattern of cocaine use where he's had multiple opportunities perhaps to change his ways and avoid that substance abuse, it shows that it's necessary, a substantial sentence here is necessary to deter such use by professional truck drivers of controlled substances. Although he does have mitigation, the state's not disputing mitigation in the record that the defendant cites. So this court's precedents show that mitigation does not require that the sentence be reduced from the maximum. This is a very serious offense. The trial court recognized so therefore albeit a very substantial sentence was fully justified in light of the particular facts of this case. So that's the state's argument. If this court has questions, I'd be willing to entertain them. Okay, thank you. A state request that this court affirm. Thank you. Mr. Del Coleman. Thank you, Your Honor. Part of the state's argument was let's, to this court, don't assume anything because the defendant can't prove it. He had some self-serving testimony and he can't prove whether there's a lack of this conversation or some of these other factors. Prusak didn't show up for two of these hearings. That's not the defendant's fault. This is again another example of Prusak being Prusak. He's ineffective in his representation of Mr. Ellis. The defendant testifies and says that there was no conversation. The state even implies that there was no conversation regarding a cap in his questioning of Barrett and of the defendant. Mr. Ellis says there was no conversation. My assumption was I was going to get a minimum sentence whether it was three to four years or whether he should have reasonably expected six years to be the minimum. But then Prusak doesn't show up and that gets turned around against the defendant. Now you can't prove that he was ineffective because he ignored two subpoenas and didn't show up? I mean, what's the defendant supposed to do here? This court asked about the balancing and I recognize that that's what this comes down to. If this is not where the line is drawn, I can't imagine a situation where the line would be drawn. Mr. Ellis got essentially no representation. Again, what is he supposed to do in this situation? The state calls Prusak to try and make its point. Prusak ignores two subpoenas. The second time, I'll note, he ignores a different client. The public defender says, hey, they set the second hearing. Let me just back up for a second. They set the second hearing at a time when they all assumed Prusak was going to be in court because he had a hearing scheduled for another client. He doesn't show up. That client assumes that he's going to show up. That client doesn't know he's not going to show up. The public defender says, look, now all of a sudden I just got assigned to this guy for the last second because Prusak doesn't even show up. The state's recommendation is, well, let's hold that against Mr. Ellis. What's Mr. Ellis supposed to do? Now, was Mr. Ellis unreasonable in thinking he was going to get a low-end sentence? Maybe, maybe not. But this isn't one of those situations where he says, well, my attorney told me I would get a minimum sentence. And I ended up, instead of getting 6 or 3 to 4, instead of getting 6, I got 12. Well, that's dumb. That's really horrible. He got 28 years. He got the maximum sentence. It wasn't anywhere in the ballpark. So, again, what's the defense supposed to do in this situation? I mean, I'll go back and I'll say admonitions. And the trial court mentioned the same thing. And from the trial court's point of view, what's the trial court supposed to do? Nothing more. I'm not arguing that the trial court was at fault here as far as the admonitions go. The trial court can't cure every defect in defense counsel's representation by admonitions. And this is one of those cases. Just briefly regarding the proximate cause, I'm just going to say that the statute says for aggravated DUI, you're guilty of aggravated DUI if the violation of subsection A, which is the simple DUI, was a proximate cause of the death. Again, the simple DUI requires presence in your system. I don't understand how presence in your system can be a proximate cause if it doesn't require intoxication. And that's all I'm going to say about that. But with that being said, my argument is premised on this as a defense. And it is undermined if that defense isn't present. But I'll just end by saying Mr. Ellis isn't asking to go home. He's only asking to withdraw his plea and start over again with an attorney who's going to represent him and at least make some effort on his behalf, be it the public defender or be it a different private attorney. He's going to spend some time in jail for this offense. There's no question about that. He's just asking that he get the fair steps as far as proper representation goes up until that point. Thank you, Your Honor, for your time. Thank you.